IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DONALD A. STROMBERG, an individual, and HOLLY ANN STROMBERG, his spouse,<br><br>Plaintiffs,<br><br>vs.<br><br>ASHLAND, INC. d/b/a ASHLAND CHEMICAL CO., a corporation, and THERMO FISHER SCIENTIFIC INC, in its own right and as successor-in-interest to FISHER SCIENTIFIC CO., and FISHER SCIENTIFIC INTERNATIONAL INC., a corporation,<br><br>Defendants. | Case No.: 1:07cv332<br><br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiffs, Donald A. Stromberg and Holly Ann Stromberg sue the above-named defendants for compensatory and punitive damages and allege:

1. The plaintiff, Donald A. Stromberg, is a citizen and resident of Rowan County, North Carolina, residing at 835 Balfour Quarry Rd., Salisbury, NC 28146 (hereinafter referred to as "Plaintiff-Husband"). The plaintiff-husband was employed by Voith Paper Service, at its Salisbury, North Carolina plant ("Salisbury plant") from 1993 until 2002 as a rigger in the shipping department. As part of his job, plaintiff-husband often worked in other parts of the plant cleaning rolls of paper. During the period of time set forth above, plaintiff-husband was exposed to organic solvents, including but not limited to benzene, toluene, and/or other solvents or products that were manufactured,

distributed, or placed into the stream of commerce by the Defendants during his term of employment. Plaintiff-husband's exposure to said products caused him to contract myelofibrosis, rendering him disabled. Plaintiff was diagnosed with myelofibrosis on September 16, 2004.

2. The plaintiff Holly Ann Stromberg is an individual residing at 835 Balfour Quarry Rd., Salisbury, NC 28146 (hereinafter referred to as "Plaintiff-Wife") and states a derivative claim for damages as more fully set forth below.

3. The defendant, ASHLAND, INC. d/b/a ASHLAND CHEMICAL CO., is a corporation incorporated under the laws of the State of Kentucky, having its principal place of business located at 50 E. River Center Boulevard, Covington, Kentucky 41011 and a registered agent for service of process located at Corporation Service Company, 327 Hillsborough Street, Raleigh NC 27603. At all material times, the Defendant manufactured, distributed, sold, and/or supplied organic solvents and chemicals either directly or indirectly to Plaintiff-husband's employer or to such other entities so that these materials were caused to be used at the Plaintiff-husband's job site.

4. The defendant, THERMO FISHER SCIENTIFIC INC, in its own right and as successor in interest to FISHER SCIENTIFIC CO., and FISHER SCIENTIFIC INTERNATIONAL INC., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located at 81 Wyman Street, Waltham, Massachusetts 02454, and a registered agent for service of process located at c/o CT Corporation System, 225 Hillsborough Street, Raleigh NC 27603. At all material times, the Defendant manufactured, distributed, sold, and/or supplied organic solvents and chemicals either directly or indirectly to Plaintiff-husband's employer or to such other entities so that these materials were caused to be used at the Plaintiff-husband's job site.

1

5. This Court has personal jurisdiction over the defendants because the Defendants are duly licensed to do business in the State of North Carolina and, at all material times are or have been engaged in business in the State of North Carolina.

6. Pursuant to 28 U.S.C.A. §1391, venue is proper in this judicial district because a substantial part of the events or omissions giving rise to this action occurred in Rowan county, North Carolina.

7. This Court has jurisdiction of this matter pursuant to 28 U.S.C.A. §1332 because the Plaintiffs are citizens of the State of North Carolina and no defendant is a citizen of the State of North Carolina. Further, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Defendants, at all times relevant and pertinent hereto, were engaged in the business of designing, manufacturing, distributing, selling, supplying, or otherwise putting into the stream of commerce hazardous and carcinogenic substances, which were either directly or indirectly sold to Plaintiff-husband's employer at its Salisbury, NC plant so that these materials where caused to be used at Plaintiff-husband's job site.

9. At all times pertinent hereto, the defendants acted through their duly authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of business of said defendants.

10. Plaintiffs have satisfied all conditions precedent to the filing of this action.

## COUNT I – NEGLIGENCE

11. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 10.

12. Defendants, at all times relevant and pertinent hereto, were engaged in the business of designing, manufacturing, distributing, selling, supplying, or otherwise

2

putting into the stream of commerce hazardous and/or carcinogenic substances to which plaintiff-husband was exposed.

13. Defendants, acting by and through its servants, agents and employees, duly authorized and acting within the scope and authority of their employment, caused hazardous and carcinogenic substances, including but not limited to benzene-containing products, to be placed into the stream of interstate and intrastate commerce and have done so for a number of years preceding the filing of this action. In particular, defendants sold, distributed and transported large quantities of products containing organic solvents and chemicals such as toluene, benzene and benzene-containing products to Plaintiff-husband's employer, with the result that said products came into use by and around plaintiff-husband.

14. Defendants, acting by and through its servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell products (as mentioned above) that were not unreasonably dangerous or defective and/or a duty to warn the Plaintiff-husband and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

15. Plaintiff, whose livelihood was dependent upon the work that he did for Voith Paper Service was required to work with and around organic solvents and chemicals manufactured, processed, supplied and/or sold by defendants. Defendants knew or should have known that persons employed as Plaintiff-husband was would be required to and would come into contact with and would work in close proximity to said products.

16. Plaintiff sustained injuries caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff's development of

3

myelofibrosis was directly and proximately caused by the negligence and carelessness of defendants in that they manufactured, processed, sold, supplied or otherwise put said organic solvents and chemicals and products containing these substances into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff-husband's whole body, body chemistry, and general well-being. Further, defendants knew or in the exercise of reasonable care should have known that Plaintiff-Husband would not know of such danger to his health.

17. Defendants breached their duties and were negligent in the following acts and/or omissions:

(a) Failing to comply with OSHA's hazard communication requirements or standards;

(b) Failing to advise Plaintiff-Husband of the dangerous characteristics of their organic solvents and chemicals;

(c) Failing to advise Plaintiff-Husband as to what, if any, would be reasonably safe and sufficient clothing, protective equipment, and/or appliances to protect him from being poisoned and disabled, as he was, by exposure to such deleterious and harmful organic solvents contained in the Defendants' products;

(d) Failing and omitting to place any warnings, or sufficient warnings on the containers of their products, the shipping or billing documents, or material safety data sheets to warn persons, such as the Plaintiff-husband, coming into contact with their products of the dangers to their health;

(e) failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling and working with organic solvents;

4

(f) failed to adequately warn, if in fact they warned at all, persons, such as Plaintiff-Husband, of the dangers to their health in coming into contact with, or breathing fumes and vapors associated with, their organic solvents;

(g) failed to recommend methods to improve the work environment;

(h) failed to develop alternative products;

(i) continued to use and market known cancer-causing products; and

(j) failed to make a reasonable inquiry to assure that Plaintiff-Husband's employers were adequately warning and protecting individuals, such as Plaintiff-Husband, against the hazards posed by the contaminants and ingredients of their organic solvents.

18. Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing organic solvents into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products. The products in question were defective at the time that they left the control of the defendants.

19. Defendants were negligent and breached their duty of due care to plaintiff-husband by taking or failing to take the actions as previously alleged to avoid harm to the plaintiff and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the organic solvents at issue in the stream of commerce.

20. The hazards posed by exposure to organic solvents and the resulting injuries and damages to plaintiff were reasonably foreseeable, or should have been reasonably foreseen by defendants.

21. As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, the plaintiff-husband developed myelofibrosis, as a consequence of which, through no fault of his own, he is severely injured, disabled and damaged.

## COUNT II – GROSS NEGLIGENCE, WILLFUL, WANTON AND RECKLESS CONDUCT

22. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 21.

23. Defendants' conduct as alleged herein was willful, wanton, malicious, and grossly negligent, for reasons including but not limited to defendants':

(a) failing to comply with OSHA's hazard communication requirements or standards;

(b) failing to provide adequate cautions, warnings, and/or hazard statements and/or explanations with their products which should have been designed to provide to the plaintiff knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(c) failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with their products which should have been designed to provide to the plaintiff knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(d) failing to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers' knowledge about the hazards caused by exposure to the products, and how to eliminate the hazards;

(e) failing to adequately test and research their products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed workers such as plaintiff;

6

(f) failing to inspect the workplace in which their products were being used to determine whether the products being used were deleterious to the health of exposed workers;

(g) failing to design, process and transport their products in a manner intended to minimize exposure during normal working conditions;

(h) failing to specify and market their products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of the products after it was known or should have been known that adequate protective measures were not being implemented;

(i) failing to recall their defective product;

(j) failing to take adequate precautions and industrial hygiene measures to protect plaintiff and exposed workers by providing protection from emissions emanating from use of the products; failing to advise Plaintiff-Husband's employer to use local ventilation; failing to provide warnings to plaintiff and workers in the facilities at issue that exposure to fumes from organic solvents was hazardous and carcinogenic; failing to take other appropriate safety and industrial hygiene measures; and

(k) otherwise failing to act reasonably and acting in a willful, wanton and reckless manner under the totality of the circumstances.

24. As a direct and proximate result of defendant's gross negligence and willful, wanton and reckless conduct, as aforesaid, plaintiff-Husband developed myelofibrosis, as a consequence of which, through no fault of his own, is severely injured, disabled and damaged.

## COUNT III – FAILURE TO WARN

25. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 24.

7

26. At all times material hereto, the defendants knew or should have known of the harmful effects and/or harmful dangers of working with organic solvents, including but not limited to benzene, toluene and products containing these substances. Defendants had a duty to warn individuals working at the Salisbury plant, including but not limited to plaintiff, of the dangers associated with the use and/or inhalation of fumes and volatiles emitting from their products.

27. Despite defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of fumes from organic solvents and chemicals, the defendants failed to warn and/or inadequately warned plaintiff of the dangers, including but not limited to:

(a) failing to comply with OSHA's hazard communication requirements or standards;

(b) failing to provide adequate cautions, warnings, and/or hazard statements and/or explanations with its products which should have been designed to provide to the plaintiff knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(c) failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with their products which should have been designed to provide to the plaintiff knowledge about the hazards caused by exposure to its products and how to eliminate such hazards;

(d) failing to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards caused by exposure to the products, and how to eliminate the hazards;

8

(e) failing to adequately test and research their products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed workers such as plaintiff-husband;

(f) failing to inspect the workplace in which their products were being used to determine whether the products being used were deleterious to the health of exposed workers;

(g) failing to design, process and transport their products in a manner intended to minimize exposure during normal working conditions;

(h) failing to specify and market their products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of the products after it was known or should have been known that adequate protective measures were not being implemented;

(i) failing to recall their defective product;

(j) failing to advise Plaintiff-Husband's employer to use local ventilation; failing to provide warnings to plaintiff and workers in the facilities at issue that exposure to fumes from organic solvents was hazardous and carcinogenic; failing to take other appropriate safety and industrial hygiene measures; and

(k) otherwise failing to act reasonably under the totality of the circumstances.

28. Defendants manufactured, processed and/or sold organic solvents to Voith Paper Service, plaintiff-husband's employer, and which were used by plaintiff's employer at its Salisbury plant. Thus, defendants had a duty to warn individuals working at the Salisbury plant, including but not limited to plaintiff, of the dangers associated with the use and/or inhalation of fumes from its products.

29. Despite defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of fumes from organic solvents, the

9

defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with their products.

30. At the time the Defendants' products left Defendants' control without adequate warning or instruction, defendants created an unreasonably dangerous condition that it knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as the plaintiff-husband. In the alternative, after the organic solvents left defendants' control, defendant became aware of or in the exercise of ordinary care should have known that their product posed a substantial risk of harm to a reasonably foreseeable user, such as the plaintiff, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

31. Defendants' failure to provide adequate warnings as to the hazards associated with organic solvents and chemicals or proper instructions on the use, handling, storage of said products caused plaintiff to develop myelofibrosis, as a consequence of which he has been injured and damaged and claims damages of the defendant.

## COUNT IV – DAMAGES

32. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 31.

33. As a result of the above-alleged conduct of the Defendants, the Plaintiff-Husband developed myelofibrosis and, as a consequence of which, he has been damaged as follows:

(a) he is totally and permanently disabled;

(b) he has been and will continue to be require to spend money for medicine, medical care, nursing, hospital, and surgical attention, medical appliances and household care;

(c) he has suffered loss of earnings and future earning power;

(d) he has incurred and will continue to incur great pain, suffering and inconvenience;

(e) he has suffered and will continue to suffer great nervous and emotional distress;

(f) he has been and will continue to be limited and precluded from normal activities; and

(g) he has suffered and will continue to suffer loss of his general health, strength, vitality and risk of death.

34. As a result of the Defendants' conduct in which they acted in willful, wanton, gross and in total disregard for the health and safety of the user or consumer, i.e., plaintiff-husband, Plaintiff therefore seeks exemplary and punitive damages against defendants to punish the defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

WHEREFORE, the Plaintiff-Husband verily believes he is entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, failure to warn and other breaches of duty as alleged herein proximately caused by the fault of the Defendants, lost wages, special damages, and punitive damages in an amount to be determined by the trier of fact, plus the costs of this action.

11

## COUNT V – LOSS OF CONSORTIUM

35. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 34.

36. As a direct and proximate result of the negligence and breach of other duties by the Defendants as aforesaid, the Plaintiff, Holly Stromberg, has been damaged and claims damages of the Defendants as follows:

   (a) The Plaintiff has been deprived of the services, society and companionship of her husband;

   (b) The Plaintiff has been required to spend money for medicine, medical care, nursing, hospital and surgical attention, medical appliances and household care for the treatment of her husband; and

   (c) The Plaintiff has been deprived of the earnings of her husband.

37. As a result of the Defendants' conduct in which they acted in willful, wanton, gross and in total disregard for the health and safety of the user or consumer, i.e., plaintiff-husband, Plaintiff-wife seeks exemplary and punitive damages against defendants to punish the defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

WHEREFORE, the Plaintiff-Wife verily believes that she is entitled to actual damages against the Defendants, jointly and severally, by reason of said loss of consortium and society proximately caused by the fault of the Defendants, lost wages, special damages, and punitive damages in an amount to be determined by the trier of fact, plus the costs of this action.

WHEREFORE, the Plaintiffs pray for judgment against all Defendants for actual and punitive damages, lost wages and special damages in amounts to be determined by the trier of fact, and plus costs of this action.

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**WALLACE and GRAHAM, P.A.**

/s/ Cathy A. Williams
Cathy A. Williams, Esq.
N.C. Bar No. 33534

Michael Pross, Esq.
N.C. Bar No. 27050

525 North Main Street
Salisbury, NC 28144
Tel. 704-633-5244
Fax. 704-633-7606
cwilliams@wallacegraham.com
mpross@wallacegraham.com

*Attorneys for Plaintiffs*

13